## Gallagher *v*. Stern.

*Mortgages—Subsequently acquired property—Judgments—Lien.*
Where a mortgagor includes in a mortgage property which he does not own at the time, but which he subsequently acquires, the mortgage will bind the after-acquired property as between the parties but not as against subsequent judgment creditors without notice.

Argued April 12, 1915.   Appeal, No. 151, January

T., 1915, by The American Bank, from decree of Superior Court, October T., 1914, No. 76, affirming decree of C. P. No. 3, Philadelphia Co., September T.; 1912, dismissing exceptions to report of auditor, in case of Nellie Gallagher v. Bernard Stern.    Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.    Affirmed.

Appeal from Superior Court.

KEPHART, J., filed the following opinion:

This appeal is from the confirmation in the court below of an auditor's report distributing funds in the hands of the sheriff arising from the sale of certain real estate.    The facts necessary to decide the questions presented may be summarized as follows:

Bernard Stern and his son, Jacob Stern, were the owners of a certain piece of real estate situate on the corner of Fifth and Pine streets, Philadelphia, each owning an undivided one-half interest.

Bernard Stern, on November 4, 1909, executed to the American Bank a mortgage covering the entire property, though he owned but a moiety of it.

On June 26, 1911, the son's interest was sold to Bernard Stern, investing him with the entire ownership.

After this purchase, judgments were entered against him, this appellee being one of the judgment creditors.

On December 2, 1912, the entire property was sold by the sheriff, and the fund realized was not sufficient to pay all of the record indebtedness of Bernard Stern.

The bank contends that inasmuch as its mortgage covered the entire property, the acquisition of the son's undivided one-half interest inured to the benefit of the mortgagee, and placed that interest under and subject to the lien of the mortgage as of the date the title passed.

The appellee claims that the proposition as contended for by the bank is only true as between the mortgagor and mortgagee, but it is not true as between the mortgagee and lien creditors who had entered their liens sub-

sequent to the sale of the son's interest.   The sheriff's sale of this property having been made on a later judgment, which had an undoubted lien against the entire property, the auditor proceeded to divide the sum realized in equal parts, allotting one part to those liens which affected the one-half interest as owned by Bernard Stern before he purchased his son's interest.

From this scheme of distribution, the American Bank's mortgage, being on this list of liens, received but a part of the amount due.   The other half of the sum realized from the sale was distributed by the auditor among the creditors whose liens were after the purchase of the son's one-half interest.   This money did not pay all these liens in full.

When the mortgagor acquired the outstanding interest, this interest was included within the terms of the mortgage and was effective as between the mortgagor and mortgagee on the principle of estoppel.   It was the duty of the mortgagee, as to other persons dealing with the mortgagor on the strength of this recently acquired interest, to give notice in some manner that he held the land under the lien of his mortgage.   An intending purchaser or creditor in his examination of the record would find a deed from the son by the sheriff to Bernard Stern.   His further examination of this title would be through the son and the son's grantor.   Bernard Stern, beyond this, was a stranger to this title.

The record, from the time the appellant entered his lien up to the date the son's title passed, would not reveal this preexisting mortgage made some time before in favor of the bank.   In a search for liens against Bernard Stern affecting this interest,. the title examiner would stop at the time the son's title passed.

We need not prolong this discussion as the question is clearly decided in Calder (Marshalls) v. Chapman, 52 Pa. 359.   In that case Calder was the owner of a 30-acre tract of land, with the exception of a certain part thereof called the factory lot.   Calder mortgaged the whole tract,

describing it by metes and bounds, including the factory lot, to which he did not have title.

Subsequent to this mortgage, Calder acquired, by deed, this factory lot from Chapman. At a later date a judgment was recovered against Calder, under which the factory lot was sold by the sheriff to one Chapman. Afterwards the mortgagees foreclosed on their mortgage, the sheriff selling to them the entire 30-acre tract of land, including the factory lot.

Upon ejectment the court says (p. 361) :

"The question is, by these sales, who became the owner of the 'factory lot'?......Now, in the present case, in searching for encumbrances or conveyances, the search against Calder would begin with his title from Chapman, and the search beyond would be against Chapman and those through whom he claimed; and a search against Calder during the same period would be considered an utter absurdity. If the mortgage and the conveyance were ten years apart, the case would only be more glaring than the one presented to us......There is no hardship on the mortgagees; for an examination of the title when they took the mortgage must have shown them Calder had no title to the 'factory lot'; an innocent creditor should not suffer for their gross negligence."

See Uhler v. Hutchinson, 23 Pa. 110.

This reasoning applies to the present case. Had the bank examined this title, it would have discovered that Bernard Stern, when he made a mortgage, owned only a half interest. The fact that the question involves the interest of a tenant in common, instead of one owning the entire piece of ground, does not affect the principle involved. The intending creditor may be satisfied with that much of the interest, and safely assume that inasmuch as there were no encumbrances against it to affect his proposed lien, he had ample security for his claim.

The facts involved in the second question may be summarized, in addition to those already noted, as follows:

Preceding the lien of the American Bank on this un-

divided one-half interest of Bernard Stern, there was a mortgage given to Mrs. Wetherill for $1,335. This mortgage was executed by Jacob Stern, the son, and Bernard Stern, while the title for the one-half interest remained in each of them respectively. The Jacob Stern interest was sold by the sheriff to Bernard Stern

We do not have before us the fund derived from that sale or the position of record of the lien creditors of Jacob Stern, and therefore we are unable to say whether or not this sale divested the lien of the Wetherill mortgage as to Jacob Stern's interest. The mortgage executed by Jacob Stern and Bernard Stern was presented to the auditor for full payment. From this we may conclude that the amount realized from the sale of Jacob Stern's interest did not reach this mortgage if it was divested. The amount named in the mortgage covered the entire property. If one of the interests was sold, and the mortgage was to be divested as to that interest, or a payment was to be made on the mortgage, the mortgagee would be entitled to payment from the fund realized or paid on account of that interest.

A mortgage executed by tenants in common is not an indebtedness separate to each tenant in common, divided as their ownerships of the land bear to the amount named in the mortgage, but as to the mortgagee, it covers all the land or any interest thereof that might be sold. The rights of the owners or others affected are worked out through the equity of subrogation.

So, in the present case, Mrs. Wetherill was entitled to be paid the full amount of her mortgage from the fund realized from the sale of the one-half interest of Bernard Stern, not by virtue of the purchase by Stern of the son's interest later on but because her mortgage was executed by all the tenants in common and covered the entire property or any interest thereof sold.

If the rights of any persons are affected by reason of this distribution, and the mortgage is still a lien on the one-half interest of Jacob Stern, they can be subrogated

to whatever rights the mortgagee would have as against this one-half interest.

As we said before there is nothing of record to show the state of this lien that would enable an auditor making distribution to give effect to this equity of subrogation. Regarding this particular claim, the court below did not err in allowing to Mrs. Wetherill the full amount of her mortgage, nor did it err in the scheme of distribution applied to this fund.

The Langenheim mortgage, similar to the bank mortgage, was a lien on the one-half interest of Bernard Stern, but unfortunately for the appellant its lien preceded that of the bank, and therefore was entitled to be paid in full.

The position taken that this mortgage should have been paid out of the funds realized from the sale of the Fifth and Pine streets property exclusively and the money realized from the sale of another property upon which it was a lien should be left for the bank, is without merit. The position of the liens of record did not entitle the bank to make this claim and as the Langenheim mortgage was a lien upon the Fifth and Pine streets property as well as the other property, Mrs. Wetherill, the next creditor to Langenheim, had a right to insist that the funds derived from the sale of the other properties be applied as the Langenheim mortgage called for.

The sum realized from the sale of these other properties was less than one-half of the amount of the Langenheim mortgage.

It is a new proposition that if A has a lien on two different pieces of ground, followed by B's lien on one of them, followed by C's lien on both these pieces of ground, that in a sale of a property where there was not sufficient money realized to pay off C's claim in full, that C could insist that A's claim should be paid out of the entire piece of property on which B had his sole lien, thereby preventing B from participating in the distri-

bution of the proceeds of sale. This is what the appellant asks in this assignment of error.

The conclusions as thus reached make it unnecessary to pass upon the question as to whether the American Bank had authority to take a mortgage to secure future advances, which advances were not obligatory on the bank. If this were decided affirmatively, and the amount of the bank's mortgage would thereby be increased, it would not increase the amount of money that the bank would receive from the fund in the hands of the sheriff as it has been exhausted in the distribution here provided.

We do not wish to be understood as affirming the position taken by the court below with relation to the power of the bank to accept the mortgage for future advances. A decision on that question was not necessary in this adjudication then before it.

The Superior Court affirmed the decree of the Common Pleas Court dismissing exceptions to the report of the auditor. The American Bank appealed.

*Error assigned* was the decree of the Superior Court.

*G. Von Phul Jones,* with him *Harry M. Miller,* for appellant.—The bank's mortgage would be disclosed to a creditor making a search in the name of Bernard Stern, or against the property which produced the funds raised by the sheriff's sale which are now before the court for distribution.

The appellee being a judgment creditor is not within the protection of the recording acts and therefore cannot claim preference in payment over a prior unrecorded mortgage: Cover v. Black, 1 Pa. 493; McCartney v. Kipp, 171 Pa. 644; Reed's App., 13 Pa. 476.

At the time the judgments were entered in this case, the bank had already acquired an equitable title or lien on the premises that could not be disturbed by any subsequent act of the debtor or his creditor: Appeal of the

Borough of Easton, 47 Pa. 255; Brown v. McCormick, 6 Watts 60.

*George P. Rich,* for appellee.—The mortgage could bind subsequently acquired land only as between the parties. As to judgment creditors of the mortgagor, the mortgage could not affect subsequently acquired real estate: Calder v. Chapman, 52 Pa. 359.

PER CURIAM, July 3, 1915:

The Superior Court correctly held that, as against judgment creditors of Bernard Stern, whose judgments were entered after he had acquired the one-half interest of his son in the property which he had mortgaged as sole owner to the appellant, its mortgage was a lien only upon the one-half interest owned by him at the time the mortgage was executed. This appeal was not allowed for the determination of any other question, and in sustaining the decree of the Superior Court—Gallagher v. Stern, 59 Pa. Superior Ct. 225—it need only be said that Calder v. Chapman, 52 Pa. 359, was properly regarded as controlling authority against the contention of the appellant. In that case Calder, the mortgagor, included in a mortgage property which he did not own at the time, known as the "Factory Lot." He subsequently acquired title to this property, and, upon a judgment entered against him, it was sold by the sheriff. The same lot was subsequently sold under proceedings on the mortgage, and, in an ejectment brought by the purchaser at the sale on the judgment against those who had purchased at the sale under the mortgage, the jury were instructed as follows: "The question raised is, Whether the 'Factory Lot' was bound by the mortgage. As between the parties it clearly would have been. The mortgagor might have perfected his title to the land for the benefit of the mortgagee. But we have to deal with subsequent lien-creditors. The judgment was entered against property acquired subsequent to the mortgage.

It became at once a lien. A judicial sale conveyed it clear of any lien under the mortgage." This instruction was assigned as error. In overruling the assignment and affirming the judgment in favor of the plaintiff, we said: "An examination of the title when they (the mortgagees) took the mortgage must have shown them Calder had no title to the 'Factory Lot'; an innocent creditor should not suffer for their gross negligence."

Decree affirmed at appellant's costs.