## Kelly's Estate.

*Wills—Construction—Option to purchase business property—Profits on resale awarded to trustees of residuary fund as distinguished from testamentary trustees of business.*

1. Where an option to purchase is exercised, the title of the optionee relates back to the date of the option and his interest is to be regarded as real estate from that time.

2. Where a testator, who was engaged in active business, created testamentary trustees of his business and testamentary trustees of his residuary estate, devising all his real estate to the residuary trustees, except certain specific devises, and directing the residuary trustees to lease the real estate necessary to carry on the business to the business trustees, and, at the time of his death, he held a lease on one of the properties used for the business which carried an option to purchase, and, after his death, both sets of trustees, acting through a straw man, exercised the option and resold the property at a profit, such profit belongs to the residuary trustees, because they held the title to the property under the will.

Exceptions to adjudication.    O. C. Phila. Co., Oct. T., 1916, No. 467.

Testator, who had a valuable business, which he desired to be continued after his death, devised his business to certain people designated as business trustees and provided for its conduct by them after his death. At the time of his death the business was located at Nos. 2330, '32 and '34 North Front Street. He devised the general residue to his residuary trustees. He made sundry provisions in regard to the relations of the two sets of trustees, as appears more fully in the extracts from the will in the opinion of the court *in banc*. By a subsequent item, he devised No. 2332 North Front Street to his executors and trustees, together with other property for the purpose of maintaining an invalid son during his lifetime; by another item he confirmed conveyance of No. 2330 which he had already make to his daughter; and by still another item, he devised "all the rest, residue and remainder of my estate, real and personal," to the residuary trustees for purposes therein mentioned. One of the aforesaid properties, No. 2334 North Front Street, was occupied under a

lease which contained an option to purchase the premises for $25,000. The option was exercised by a straw man acting for both the business trustees and the residuary trustees, so that there might be no question as to the right to exercise it. An immediate resale was made, which showed a clear profit of $24,612.91. The Integrity Title and Trust Company, substituted business trustee, thereupon filed an account which came up for audit before Van Dusen, J. The only question for disposition was whether the aforesaid fund, to wit, the profit on the purchase and resale of the said property should be awarded to the business trustees or to the residuary trustees. Upon this subject the Auditing Judge said in his adjudication:

"The question is whether this fund goes to the business trustees (in which case it is available to pay business creditors) or to the trustees of the residuary estate; and in its solution two points arise:

"(a) Is this option and the fund resulting therefrom real estate? and

"(b) If it is real estate, under which provisions of the will does it pass?

"(a) It is well settled that where an option to purchase real estate is exercised, the title of the optionee relates back and his interest is to be regarded as real estate from the date of the option. This was the ground of decision in Kerr v. Day, 14 Pa. 112, and Peoples Street Ry. Co. v. Spencer, 156 Pa. 85, in both of which cases the English decisions and the reasons for the rule were thoroughly discussed. The judgments rendered in each of these cases are on matters quite different from the case now before us; for Kerr v. Day held that the possession of the optionee was notice to a prospective purchaser, and People's Street Ry. Co. v. Spencer held that the optionee was entitled to the proceeds of a fire insurance policy, where the fire occurred before he exercised his option; but the conclusions in both are rested flatly on the general principle above stated. McCutcheon's Estate, 24 Dist. R. 94, states the converse of the rule, and the conclusion is more nearly in point. In that case it was held that the interest of the optionor became personal estate upon the exercise of the option as of the date of the option and therefore passed as such under the intestate laws where his death occurred between the date of the option and the date of the exercise thereof. I, therefore, conclude that this option and the profit that flowed from it are to be regarded as real estate.

"(b) The will gave to the business trustees 'the good-will of the business and all the contracts of the same and all assets of every kind which at the time of my decease may be connected with the business itself.' Testator then remarked that this included, of course, merchandise on hand and contracted for, cash and money due to him. If there had been no more, I should have thought that the business trustees would become entitled to the real estate occupied for business purposes as well as to the leasehold. The real estate was an asset used in the business as much as business furniture and fixtures. But the testator showed that he intended differently, for he further provided that the trustees of the residuary estate should 'make leases of the real estate now used in said instalment business or which may be used in and about the same at the time of my decease, at the same rent now being paid therefor,' and that this rent should go to his residuary estate.

"Furthermore, he specifically devised No. 2332 North Front Street in trust for his son, Thomas Kelly. This property was used in the business as one unit with the property in question. Real estate used in the business, therefore, does not go to the business trustees.

"Putting the two conclusions together, it follows that this fund must go to the trustees of the residuary estate. It is no reproach to this conclusion to say that it is the result of technical considerations. It was the testator who

chose to be technical, differentiating between real and personal estate. The law is accustomed to deal with and think and speak of potential real estate as having been real estate in fact from the beginning, if the option is exercised; and the words must be given their customary meaning as used by lawyers. The argument on behalf of the business trustee (drawn by analogy from the law of conversion by will) that there is no conversion because the obligation is conditional and not absolute, is noticed and disposed of by the cases above cited."

*John Stokes Adams* and *Levi & Mandel,* for exceptants.

*Howard H. Yocum, Alfred N. Keim* and *Carroll R. Williams,* contra.

HENDERSON, J., Nov. 27, 1925.—At the time of his death, Aug. 9, 1915, the testator was engaged in what is known as the instalment business, and he gave it to trustees to carry on after his death. He had several stores, one of them contained in three properties, Nos. 2330, '32 and '34 North Front Street. In his lifetime he had conveyed title to No. 2330 North Front Street to his daughter, Laura K. Bayo, and the fourth item of the will confirms this conveyance. He devised No. 2332 North Front Street to trustees for the maintenance of his son, Thomas Kelly. On June 9, 1915, he entered into a five-year lease for No. 2334 North Front Street, with a covenant of renewal for an additional term of five years; the lease granting him an option to purchase the property for $25,000.

This option was exercised early in 1925 and the property resold at a profit of $24,612.91. The Auditing Judge awarded this sum to the trustees of the residuary estate, and the trustees of the business have excepted to this ruling and contend that this fund belongs to the trustees of the business to pay the creditors thereof.

We must now examine the will to ascertain who has title to this fund.

The testator separated his business, which he authorized to be continued after his death, from the rest of his estate, creating two trusts; the former he gave to his "Business Trustees," and the latter, subject to certain minor provisions, he gave to the "Trustees of my Residuary Estate." He specially directed that no liability of the business trust should attach to the residuary estate.

By the second item of his will he directed as follows:

"It is my desire that after my decease, the instalment business conducted by me at No. 624 Market Street and 1940 North Front Street, Philadelphia, or wherever said business at the time of my decease may be conducted, either individually or as a copartner, shall be carried on, after my death, by the persons hereinafter named, their successors and assigns.

"It is my intention that the business carried on shall comprise the good-will of the business and all the contracts of the same and all assets of every kind which, at the time of my decease, may be connected with the business itself. This will, of course, include all merchandise which may be on hand and which may be contracted for, and all cash in said business, as well as all money due me in said business. The business thus to be conducted shall be taken in charge by the Trustees, subject to making of all contracts entered into by me in and about the business and also subject to the payment of all debts which may be owing or become owing on account of the business theretofore contracted for in and about the conduct of the same, as well as all other debts owing by me at the time of my death.

"I desire, however, that this business shall be so conducted as that there shall be no liability for its success or failure thereof incurred by my residuary

estate. The latter I intend to give to Trustees for the specific purposes to which I will devote said residuary estate.

"In order that the business may be kept separate and apart, I desire and direct that it shall be conducted under the name of the Trustees as 'Business Trustees.'

"With this explanation I give and bequeath said business and its assets, together with all my stock in Pine Beach Improvement Company, subject to the performance of the business contracts and the payment of the debts as heretofore specified, to Richard T. Kelly, Laura I. Kelly and Harry A. Bannon, and the survivor or survivors of them, In Trust, to carry on said business for the uses and purposes following, with the express understanding, to be binding upon all persons doing business with said Trustees, that said instalment business and Pine Beach Improvement Company shall be conducted and managed by them distinct and separate from my residuary estate:

"In trust, under said name, said Trustees shall conduct said instalment business and shall also conduct the business of Pine Beach Improvement Company without charge to my residuary estate.

"In Trust, from time to time, semi-annually, if possible, the said Trustees shall pay over all dividends on stock of Pine Beach Improvement Company, and all sums which can be appropriated out of the net income of the business to the Trustees of my residuary estate, to be used and appropriated by them in the way and manner directed of and concerning the income of the principal of said residuary estate.

"As I have said, I desire that said instalment business, as well as all dividends on said stock of said Company, shall be managed and controlled by said Trustees without any liability therefor on the part of my residuary estate for the debts which shall be incurred and the contracts which shall be made in and about the carrying on of the business.

"I direct that the Trustees of my residuary estate shall, from time to time, make leases of the real estate now used in said instalment business or which may be used in and about the same at the time of my decease, at the same rent now being paid therefor. The rental thus paid shall be used by the Trustees of my residuary estate as part of the income of the latter.

"If my instalment Trustees or a majority of them shall agree in writing to extend the business because they may deem such extension desirable and profitable, they shall have the right to do so.

"I also confer upon said instalment Trustees or a majority of them the power, at any time, if they deem it advisable to sell said business and assets and close out the same, to make such sale for such purchase price as may be agreed upon by a majority of them. This sale may be made for all cash or for all [part] cash and part payable in the future, the future payments being secured or not secured, as to the Trustees shall seem best. The net proceeds of such sale shall go to the Trustees of the residuary estate."

By the third clause of his will he devised No. 2332 North Front Street and three other properties in trust to provide for the support of his son Thomas.

And by the sixth clause he gave "all the rest, residue and remainder of my estate, real and personal," to the trustees of the residuary estate, for the purposes therein set forth.

He owned numerous properties in this city, in Atlantic City and in Ocean City, and with the exception of the four specifically devised, all fell into the residuary estate.

It should be noted that he authorized his residuary trustees to lease the properties used in his instalment business to his business trustees, at the

Kelly's Estate.

rental with which the business was charged at the time of his death, and he provided that such rents were to be paid to the residuary trust and distributed as income.

To recapitulate: the testator had conveyed No. 2330 North Front Street to his daughter in his lifetime; he devised No. 2332 North Front Street in trust for his son Thomas; and he had a lease for No. 2334 North Front Street, which contained the option to purchase. In these three properties the business at that location was operated.

The Auditing Judge held that where an option to purchase is exercised, the title of the optionee relates back and his interest is to be regarded as real estate from the date of the option; citing in support thereof: Kerr v. Day, 14 Pa. 112; Peoples, &c., Co. v. Spencer, 156 Pa. 85, and McCutcheon's Estate, 24 Dist. R. 94. In this conclusion we concur.

But it is contended by the business trustees and the principal creditor that the lease for No. 2334 North Front Street passed to them under the clause of the will directing that the business shall "comprise the good-will of the business and all contracts of the same and all assets of every kind which, at the time of my decease, may be connected with the business thereof." It is argued that this language is broad enough to pass real estate, and as the business has had the burden of meeting the rental, it should have the benefit arising out of the option. It may be conceded that the language is broad enough to pass real estate and that the business trustees have had the burden of maintaining the lease, but the benefits of the option do not pass to the business trustees because the will devises all the realty to the residuary trustees and certain specific devisees.

The lease and option therein contained are disposed of by the will, which gave the lease to the business trustees, and the option, which, when exercised, became realty, was devised to the residuary trustees. The testator has dealt differently with his two rights—lease and option—the former for the benefit of his business trustees and the latter for his residuary trustees, as was his privilege so to do.

The exceptions are dismissed and the adjudication is confirmed absolutely.

THOMPSON, J., was absent.